IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:13-CV-235-FL

| | | |
|---|---|---|
| BARBARA ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| YOPP PROPERTIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion for summary judgment. (DE 52). Also pending before the court are defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (DE 48) and plaintiff's motions to strike her deposition and compel admissions. (DE 59, 60). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons stated more specifically herein, the court denies plaintiff's motion to strike and motion to compel, and grants defendant's motion for summary judgment. Defendant's motion to dismiss for failure to state a claim upon which relief can be granted is dismissed as moot.

## STATEMENT OF THE CASE

On November 1, 2013, plaintiff *pro se*, who has an unspecified disability, initiated this suit against defendant, a North Carolina limited liability company ("LLC") that owns and operates an apartment complex in Wilmington, North Carolina, where plaintiff formerly lived (the "Property"). Plaintiff complains, in principal, that defendant violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, when defendant failed to provide alternative housing while plaintiff's apartment was renovated. In particular, plaintiff alleges defendant 1) denied her equal housing opportunity on the

basis of race, in violation of 42 U.S.C. § 3604(a) and (b); 2) denied her equal housing opportunity because of her handicap, in violation of § 3604(f)(1) & (2); 3) misrepresented the availability of an apartment to her because of her race and/or handicap, in violation of § 3604(d).[1] Plaintiff also asserts a claim for constructive eviction, under North Carolina law and a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq.[2]

On April 28, 2014, plaintiff sought leave to file an amended complaint. Plaintiff's proposed amendment asserted claims against defendant's members and against two other LLC's controlled by defendant, but did not alter plaintiff's claim for relief against defendant. Rather, it restyled the allegations of the original complaint, which were hand-written, in to a typed format.

The court allowed plaintiff's amended complaint as against defendant on May 27, 2014. However, the court held in abeyance ruling on whether plaintiff could proceed against the other proposed defendants. On June 24, 2014, the court denied plaintiff's motion for leave to amend with regard to the proposed defendants ("June 2014 order"). In the June 2014 order, the court held that plaintiff could not add the additional defendants where she neither asserted a claim against them individually nor stated any facts sufficient to invoke the doctrine of piercing the corporate veil under North Carolina law.

After completion of a period of discovery, defendant seeks summary judgment on all plaintiff's claims against it. In support of its motion for summary judgment, defendant relies on 1) plaintiff's deposition and 2) the declaration of Jocelyn Boykin, the former manger of the Property

---

[1] The complaint only alludes to a putative violation of § 3604(f)(1) & (2). Plaintiff, through brief in opposition, articulates § 3604(a), (b), and (d), as additional bases for FHA liability.

[2] Plaintiff's complaint does not include an explicit reference to § 75-1.1. Plaintiff, instead, prays for "treble damages." For the purposes of this order, the court construe's plaintiff's request for treble damages as an assertion of defendant's liability under the UDTPA.

2

Case 7:13-cv-00235-FL   Document 71   Filed 02/12/15   Page 2 of 17

during plaintiff's tenancy. In addition, defendant relies on certain documentary evidence, including: 1) a letter, dated October 4, 2011, from Boykin to plaintiff, (Oct. 4, 2011, letter (DE 54-2, Ex. K[3])); 2) a note handwritten by plaintiff, (Armstrong Letter (DE 54-2, Ex. L)); and 3) an incident report prepared by Boykin, (Incident Report (DE 54-2, Ex. A)).

In response, plaintiff relies on defendant's responses to plaintiff's first request for admissions ("RFAs"). Plaintiff has submitted two versions of defendant's responses, a first response, dated May 6, 2014, and signed by defendant's former counsel, (Def.'s First Resp. to Pl.'s First Req. for Admis. (DE 61-2)), and a second response, dated August 25, 2014, which is signed by defendant's present counsel. (Def.'s Second Resp. to Pl.'s First Req. for Admis. (DE 61-1)). Plaintiff, in addition, seeks an order striking from the record her deposition testimony, which is relied on heavily by defendant in support of its motion.

Since the filing of plaintiff's motions to compel and strike, there have been a flurry of filings. Defendant responded to those motions on January 16, 2015. (DE 62, 63). On that same day, defendant replied to plaintiff's response in opposition to the pending motion for summary judgment. (DE 65). Thereafter, on February 6, 2015, plaintiff filed a reply to defendant's response in opposition to her motion to strike and a sur-reply in response to defendant's reply regarding its motion for summary judgment. (DE 68).

**STATEMENT OF FACTS**

Plaintiff was a tenant at the Property, which accepted federal housing subsidies under Section 8 of the FHA, from October 1, 2010, until, at latest, October 7, 2011. Plaintiff began experiencing problems with mold in June 2011. Plaintiff first noticed the appearance of mold in her apartment

---

[3]Exhibit lettering refers to the designation assigned by CM/ECF, not the designation relied on by the parties.

3

when she attempted to change her air-conditioning unit's filter on June 17, 2011. (Armstrong Dep. 30:1-9). The unit had not been draining properly, causing mold to form. (See id. ). She immediately reported the issue to Boykin, who made arrangements to have plaintiff's apartment inspected for mold and have any mold detected removed. (Boykin Decl. ¶¶5-12). Defendant also replaced plaintiff's air conditioning unit. (See id.). As a result of the work being done, plaintiff was temporarily displaced from June 19, 2011, until July 17, 2011. (Id.). During that period, defendant provided plaintiff hotel accommodations, at her request. (Id. ¶¶6, 12). Defendant also asked plaintiff to return the keys to her apartment temporarily, in order to protect her belongings. (See Def.'s First Resp. to Pl.'s First Req. for Admis. ¶¶ 35-37; Def.'s Second Resp. to Pl.'s First Req. for Admis. ¶¶35-37).

As plaintiff's apartment underwent repairs, plaintiff requested Boykin transfer her to another unit, but Boykin informed her that none were currently available. (Boykin Decl. ¶11). During that conversation, Boykin told plaintiff a unit would be available at the expiration of her lease in September, and plaintiff was free to transfer at that time.(Id.) However, plaintiff indicated she did not wish to renew her lease, regardless of unit availability. (Id.; see also Armstrong Dep. 44:7-9). Based on plaintiff's indication she would be terminating her lease, Boykin rented the apartment previously offered to plaintiff prior to September 2011. (Boykin Decl. ¶11).

On September 2, 2011, plaintiff gave Boykin written notice she would not be renewing her lease. (Armstrong Dep. 48:3-6 & Ex. H). However, after plaintiff submitted her written notice to vacate, Boykin told plaintiff defendant planned to renovate the apartments, specifically stating the units were going to be "totally renovated," and that plaintiff would have "no drainage problems or issues" going forward. (Id. 48:9-23). As a result, plaintiff cancelled her notice to vacate on

4

September 23, 2011, renewed her lease and indicated she wanted to transfer apartments at the end of the month. (Boykin Decl. ¶14; see also Armstrong Dep. 48:14-23). Plaintiff was never told the apartment previously offered to her was no longer vacant. On October 3, 2011, plaintiff requested a transfer to that apartment, but was denied due to lack of availability. (Id. ¶17).

As relevant to plaintiff's claims, beginning on or around September 26, 2011, plaintiff began experiencing problems with moisture in her apartment, after a heavy rainstorm. (Id. ¶15; Armstrong Dep. 56:12-23). On October 4, 2011, Boykin had plaintiff's apartment inspected for mold, which was detected. (Boykin Decl. ¶19). Subsequently, Boykin drafted a remediation plan, which was delivered to plaintiff by letter dated October 4, 2011, on October 5, 2011. (See id.; see also Oct. 4, 2011, letter). The letter stated remediation would take "10-15 days" and informed plaintiff that it was in her "sole discretion" to "remove . . . [her] occupancy" during the process. (Oct. 4, 2011, letter). However, plaintiff was asked to remove any belongings that potentially could be damaged during the work. (Id.).

On October 6, 2011, plaintiff called Boykin to inform her she had removed her items. (Boykin Decl. ¶20). In that conversation, plaintiff stated the leasing office "needed to inspect the apartment and get her keys."(Id.). In response, Boykin told plaintiff she could "bring her keys to the office if she wanted to turn them in." (Id.). Plaintiff became upset and complained Boykin had demanded she surrender her keys. (Id. Ex. A, at 5).

On October, 7, 2011, Boykin found the keys to plaintiff's apartment, the key to plaintiff's mailbox, and a letter dated October 5, 2011, in the rental office's drop box. (Id. ¶21; see also Armstrong Letter). In that letter, plaintiff stated that she had been "asked to leave" her unit "without any remedy, " and thus considered herself to be "constructively evicted." (Armstrong

5

Letter).  Boykin interpreted plaintiff's letter to mean she had quit her apartment.  (See Boykin Decl. ¶ 22 & Ex. M).  Plaintiff later indicated she returnd her keys because she thought was moving to a new apartment. (Armstrong Dep.  77:1-7).

Around October 10, 2011, plaintiff met with Boykin and requested keys to another unit, but was refused.  (Boykin Decl. Ex. A, at 6; see also Armstrong Dep. 87:1-4).  At that time, in addition, plaintiff inquired as to whether she would be given a hotel room and was informed defendant was "not going to provide [her] with any other assistance." (Id. at 82:13-17).  Prior to the October 10 meeting, plaintiff had never requested a hotel accommodation.  (Id. 82:7-10).  Thereafter, defendant rented plaintiff's former apartment to someone of a different race.  (Id. 24:1-21).  The instant action followed.

## DISCUSSION

**A.      Plaintiff's Motions**

1.      Motion to Strike

The court first addresses plaintiff's motion to strike her deposition from the record.  (DE 59). Plaintiff contends her deposition must be stricken, because defendant failed to comply with Federal Rule of Civil Procedure 30(e) governing review of depositions by the deponent.  In particular, plaintiff argues that, despite her request, she was provided no opportunity to review and correct the transcript.  In addition, plaintiff alleges defense counsel acted improperly at the deposition by, among other things, making statements off the record indicating plaintiff was "not 'going about [objections] the right way.'" Id.

Federal Rule of Civil Procedure 30(e) allows the deponent to review and alter deposition testimony.  Fed. R. Civ. P. 30(e).  That rule provides "On request by the deponent or a party before

6

the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available . . . to review the transcript" and make changes. Id.

Plaintiff did not adhere to the requirements of Rule 30(e). Plaintiff contends defendant "did not provide [her] with the opportunity to review and correct the transcript as requested." However, plaintiff does not contend that she requested the opportunity to review and correct the transcript *during* the deposition, as is contemplated by the rule. See Fed. R. Civ. P. 30(e) (applying "[o]n request . . .*before the deposition is complete*."). Moreover, plaintiff's contentions are aimed at specific failings of defendant to make available to her the deposition transcript. But, the applicable Rule speaks of the responsibility of the "officer," i.e., the court reporter, to make the transcript "available." See generally Parkland Venture, LLC v. City of Muskego, 270 F.R.D. 439 (E.D. Wis. 2010); see also, Williams v. Kettler Mgmt, Inc., No. CBD-12-1226, 2014 WL 509474, at *3 (D. Md. Feb. 5, 2014).

In addition, where plaintiff complains of "oppressive" conduct on the part of defense counsel, even if the court were to construe that language as a motion for a protective order, that request must be denied. A protective order is a discovery motion. Pursuant to the court's prior scheduling order, all discovery motions were to be filed within 30 days of the close of discovery. The instant motion to strike was filed outside of that window.

In sum, plaintiff has failed to follow the requirements set forth in Rule 30(e), as she neither requested to review her deposition transcript nor sought out the court reporter for review. In addition, plaintiff's request to strike her deposition as a result of defense counsel's "oppressive" behavior is not cognizable as a motion to strike. Accordingly, plaintiff's motion to strike must be denied.

7

Case 7:13-cv-00235-FL   Document 71   Filed 02/12/15   Page 7 of 17

2.  Motion to Compel

Plaintiff also submits a motion to compel admissions. In her motion, plaintiff contends defendant intentionally failed to respond to certain RFAs. Defendant contends, however, that plaintiff's motion is untimely, or, in any event, that defendant has responded to the RFAs in question.

As an initial matter, plaintiff's motion to compel is deficient where it does not have attached the specific admissions to which plaintiff seeks a response. Under Local Rule 7.1 "[n]o motion[] to compel discovery . . . will be considered by the court unless the motion sets forth or has attached thereto, by item, the specific question, interrogatory, etc., which respect to which the motion is filed." Local Civ. R. 7.1(c).

Plaintiff's motion to compel, in any event, is also untimely. Pursuant to Local Rule 7.1(a), all motions must be filed within 30 days after the close of discovery. Local Civ. R. 7.1(a). Here, discovery closed on November 30, 2014, and plaintiff did not file her motion until January 5, 2015, more than 30 days later. In addition, although the district court has "substantial discretion . . . in managing discovery . . . [including the] discretion to consider an untimely motion to compel," United States ex rel. Becker v. Westinghouse Savannah River, Co., 305 F.3d 284, 290 (4th Cir. 2002) (internal citations and quotations omitted), such discretion is not unfettered. Id. The court may review an untimely motion to compel only "if the movant offer[s] an acceptable explanation for [the motion's] tardiness." Id. Here, plaintiff has not done so.

In sum, both plaintiff's motions must be denied. With regard to plaintiff's motion to strike, plaintiff failed to follow the requirements mandated by Federal Rule of Civil Procedure 30(e). In addition, plaintiff's motion to compel is untimely and does not comply with the applicable local

8

rules.

**B.      Motion for Summary Judgment**

   **1.      Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference

9

is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

When a party seeks summary judgment against a *pro se* plaintiff, the plaintiff is entitled to certain safeguards. Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Specifically, plaintiff is entitled to notice sufficiently understandable to fairly apprise her of what is required in response. Id. In this case, plaintiff has been afforded such notice. (DE 56). Accordingly, the court may now turn to the substance of defendant's motion.

  **2.  Analysis**

    a.  Fair Housing Act

Defendant first contends all plaintiff's FHA claims are time barred as they were filed outside the applicable limitations period. The FHA a two year statute of limitations, which begins to accrue on "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). In this case, plaintiff filed her complaint on November 1, 2013, but her last interaction with defendant came on October 10, 2011, when she was refused alternate housing. Thereafter, plaintiff had no contact with defendants regarding an application for rental, or the terms or conditions of her tenancy. Accordingly, the limitations period began on October 10, 2011, at latest. Because plaintiff did not file until November 1, 2013, more than two years later, her FHA

10

claims are time barred.

In addition, equitable tolling is not available to plaintiff. Equitable tolling tolls the statute of limitations in cases where "extraordinary circumstances beyond plaintiff['s] control" justify that result. Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000); see also Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 227 (4th Cir. 2005) (applying Harris to a Title VII claim); Wilder v. Preston, No. RDB-09-155, 2009 WL 6042347, *4 (D. Md. Nov. 23, 2009) (discussing application of equitable tolling to FHA claim).

As an initial matter, plaintiff did not suggest entitlement to equitable tolling in her response to defendant's motion. For the first time, in her sur-reply, plaintiff argues she had insufficient finances to pursue vigorously her claim. However, the relevant inquiry is not plaintiff's ability to *pursue* her claim, but instead her ability to file her claim in a timely manner. Harris, 209 F.3d at 330. Plaintiff also suggests she did not have the ability to obtain vital information "bearing on the existence" of her claim and thus could not timely file her claim. (DE 62). However, it is apparent the facts underlying plaintiff's claim were ascertainable to her immediately. Ignorance of the law, moreover, cannot support equitable tolling. See Harris, 209 F.3d at 330-31 (holding no equitable tolling where counsel erroneously advised petitioner of statute of limitations).

In sum, plaintiff's FHA claims must be dismissed as time barred.

        1.      Failure to Accommodate

            I.      Handicap

Defendant also advances a number of arguments in support of its motion for summary judgment on plaintiff's FHA claims on the merits. In particular, defendant argues that plaintiff has failed establish discrimination, defined under § 3604(f)(3), and that, in any event, an accommodation

11

was not necessary and thus not required by the FHA.

Defendant first argues plaintiff has failed to establish "discrimination" as that term is contemplated by the statute. In response, plaintiff directs the court to her own statements requesting either a different unit or hotel accommodations, and argues defendant's failure to provide the same constitutes discrimination.

The FHA prohibits discrimination in the rental of a dwelling, or in the terms, conditions, or privileges of the rental of a dwelling, to any renter because of the handicap of the renter. § 3604(f)(1)&(2). Discrimination, as relevant here, is defined as "a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy the dwelling." § 3604(f)(3). A "reasonable accommodation" is an alteration to some existing policy that, if no exemption were granted, would prevent plaintiff from the use and enjoyment of her dwelling. See 42 U.S.C. § 3604(f)(3).

Here, plaintiff fails to create a dispute of material fact where she fails to allege she requested a change in policy, but instead merely asked for alternative housing accommodations. In any case, courts routinely have found failure to remediate mold, without something more, is not a cognizable claim under the FHA. See, e.g., Costello v. Johnson, No. 3:11-CV-198, 2011 WL 3820890, at *5 (E.D. Va. Aug. 29, 2011); Lee v. McCreary, No. 1:09-CV-2271, 2010 WL 925173, at *5 (N.D. Ga. Mar. 8, 2010). Cf. Ogundimo v. Steadfast Props. & Dev., Inc., 1:09-CV-231, 2009 WL 650550, at *3 (E.D. Cal. Mar. 12, 2009) (holding that requiring plaintiff take affirmative action to remediate mold, despite her known handicap, could constitute a violation of the FHA). Although there was mold in plaintiff's apartment, the record does not forecast evidence sufficient to

demonstrate defendant had a discriminatory mold remediation policy.

Defendant also argues that, even if plaintiff requested an accommodation, plaintiff has adduced insufficient evidence to demonstrate an accommodation was necessary. Plaintiff, in opposition, attempts to support the necessity of an accommodation by referencing her own statement that she had no alternative housing. To be required under the FHA, an accommodation must be "necessary," meaning it must be directly related to the amelioration of plaintiff's handicap. Bryant Woods Inn v. Howard Cnty., 124 F.3d 597, 603-04 (4th Cir. 1997). Here, defendant's motion must be granted where plaintiff forecasts no evidence supporting the inference alternative housing would directly improve her unspecified condition.

ii.     Race

Defendant also moves for summary judgment because plaintiff has failed to highlight any evidence of a race-based FHA violation. Sections 3604(a) and (b) prohibit discrimination on the basis of "race, color, religion, sex, familial status, or national origin." To prove such a claim plaintiff must present evidence of a discriminatory intent or disparate impact. Betsey v. Turtle Creek Assocs., 736 F.2d 983, 986 (4th Cir. 1984). Plaintiff has failed to forecast any evidence in support of this claim, and upon review of the record, the court is unable to identify any evidence in support of these allegations. Although plaintiff alleges defendant rented the renovated apartment to someone of a different race, that fact in itself is insufficient to show defendant's policies had a disparate impact on persons of different races or were the result of a discriminatory animus. Accordingly, defendant's motion for summary judgment must be granted

2.     False Representation

Plaintiff complains defendant, in October 2011, misrepresented the availability of the

13

apartment offered to her in July 2011. Defendant disputes these allegations and, as relevant here, argues plaintiff forecasts insufficient evidence to support this claim. In an attempt to create a dispute of fact, plaintiff points to the unsworn, hearsay statements of a former neighbor, which, she claims, suggest the apartment was vacant.

The FHA prohibits representations made "to any person because of . . .[race or] handicap." 42 U.S.C. § 3604(d). In support of its motion defendant highlights Boykin's declaration, wherein she avers the apartment in question was rented after plaintiff indicated she would be canceling her lease. Plaintiff's evidence is insufficient to create a genuine dispute of fact on the issue of misrepresentation. Plaintiff's former neighbor merely stated that he infrequently saw people enter and exit the apartment, not that the apartment was unoccupied. (Armstrong Dep. 25:20-25). Without more, defendant is entitled to summary judgment on this claim.

In sum, as plaintiff's FHA claim is barred by the statute of limitations. In addition, plaintiff has failed to forecast sufficinet evidence to support her FHA claim on the merits. Therefore, summary judgment must be granted for defendant on these two alternate grounds.

    b.  State Law Claims

Plaintiff also asserts state law claims against defendant. Chief among these is a claim for constructive eviction. However, plaintiff also suggests defendant violated the UDTPA. Defendant seeks summary judgment on both of plaintiff's state law claims.

    1.  Constructive Eviction

Constructive eviction occurs where a landlord deprives his tenant of "that beneficial enjoyment of the premises to which he is entitled under his lease," causing his tenant subsequently to abandon the premises. Marina Food Assoc., Inc. v. Marina Rest., Inc., 100 N.C. App. 82, 92

14

Case 7:13-cv-00235-FL   Document 71   Filed 02/12/15   Page 14 of 17

(1990), disc. rev. denied 327 N.C. 636 (1990); see also Cover v. McAden, 183 N.C. 641, 112 S.E. 817, 820 (1922) (noting constructive eviction may occur after a breach of an implied warranty). "[W]rongful demand or notice to quit or vacate leased premises is made by a lessor . . . followed by immediate surrender of possession by the lessee" is a constructive eviction. Dobbins v. Paul, 71 N.C. App. 113, 117 (1984), overruled on other grounds by, Stanley v. Moore, 339 N.C. 717 (1995).

Defendant argues plaintiff has failed to submit any evidence that she was asked to "quit or vacate" her apartment. Plaintiff contends defendant requested she turn in her keys during the remediation process, and that such request amounts to a demand she vacate her apartment. In support of this argument, plaintiff directs the court to defendant's response to plaintiff's first set of RFAs. However, plaintiff has failed to put forth more than a scintilla of evidence in her favor, and thus cannot create a dispute of fact on the issue of whether plaintiff was asked to vacate the premises in October 2011.

Defendant's responses to plaintiff's RFAs show only that plaintiff was asked, at some time, to return her keys. (Def.'s First Resp. to Pl.'s First Req. for Admis. ¶¶ 35-37; Def.'s Second Resp. to Pl.'s First Req. for Admis. ¶¶35-37). It does not follow that defendant demanded plaintiff vacate her apartment in October 2011. This is especially true where plaintiff was asked to vacate her apartment twice, in both June and October 2011. The admissions contain no date.

Even assuming defendant demanded plaintiff return her keys at some time, other evidence of record provides a context, whereby the court can conclude it did not occur in October 2011. First, defendant's October 4, 2011, letter stated plaintiff was welcome to remain in her apartment "throughout the . . . remediation process," belying plaintiff's claim she was forced out of her home. (Oct. 4, 2011, letter). Moreover, the record shows that in Boykin's October 6, 2011, conversation

15

with plaintiff, Boykin stated, in permissive terms, that plaintiff could turn in her keys and vacate her apartment "if she wanted." (Boykin Decl. Ex. A, at 5).

In any event, the evidence forecasted by plaintiff does not draw this conclusion in dispute. At her deposition, plaintiff stated Boykin told her "[Boykin] wanted the keys to the unit so that [plaintiff] could get another unit." (Armstrong Dep. 77:5-7). By plaintiff's own admission, Boykin never demanded she vacate her apartment. Boykin's alleged statement, as it relates to plaintiff renting another unit, is immaterial to this determination, because plaintiff's constructive eviction claim is based on defendant's alleged demand she leave her apartment. Accordingly, defendant is entitled to summary judgment on this claim.

### 2. UDTPA

Finally, defendant moves for summary judgment on plaintiff's UDTPA claim. A claim of unfair and deceptive trade practices requires a showing that "1) the other party committed an unfair or deceptive act or practice; 2) the act in question was in or affecting commerce; and 3) the act proximately cause claimant injury." Walker v. Fleetwood Homes of N.C. Inc., 362 N.C. 63, 71-72 (2007).

Plaintiff suggests Boykin's demand she vacate her apartment constitutes an unfair and deceptive trade practice. However, as discussed above, the record does not support the conclusion defendant ever demanded plaintiff vacate her apartment. Accordingly, defendant's motion for summary judgment must be granted.

In sum, plaintiff's state law claims for constructive eviction and violation of the UDTPA must fail. Plaintiff has failed to forecast evidence showing a reasonable juror could find in her favor

16

on either claim. Accordingly, defendant is entitled to summary judgment on these claims.[4]

## CONCLUSION

Based on the foregoing, plaintiff's motion to strike her deposition (DE 59) and her motion to compel admissions (DE 60) are DENIED. In addition, defendant's motion for summary judgment is GRANTED. (DE 52). Defendants outstanding motion to dismiss for failure to state a claim upon which relief can be granted is DISMISSED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of February, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[4]Plaintiff again attempts to invoke the doctrine of piercing the corporate veil under North Carolina law. However, as the court held in its June 2014 order, where plaintiff has failed to allege any wrongful conduct on the part of the individuals against whom she seeks recovery, piercing the corporate veil is inappropriate in this case. Accordingly, the court declines to address plaintiff's argument.

17